309 So.2d 161 (1975)
Parker MEYER
v.
STATE of Mississippi.
No. 48253.
Supreme Court of Mississippi.
March 3, 1975.
Rehearing Denied March 24, 1975.
*163 Barnett, Montgomery, McClintock & Cunningham, Jackson, for appellant.
A.F. Summer, Atty. Gen. by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, INZER and BROOM, JJ.
INZER, Justice, for the Court:
Appellant Parker Meyer and Roscoe Higgins were jointly indicted in the Circuit Court of the First Judicial District of Hinds County for the sale of heroin, a controlled substance. Appellant was tried separately and convicted. He was sentenced to serve a term of eighteen years in the State Penitentiary. From this conviction and sentence he appeals. We affirm.
The evidence on behalf of the state established that on December 12, 1972, Special Agent Tom Dial, of the Federal Bureau of Narcotics, acting under cover, contacted one James Lay relative to purchasing a pound of heroin for $10,000. Lay agreed to sell him the heroin and arrangements were made to consummate the deal in the early morning hours of December 13, 1972, at the Holiday Inn North in Jackson. Before contacting Lay, Agent Dial had received information that Lay was registered in Room 402 and Room 338 of the Holiday Inn North. Certain other individuals associated with Lay were also registered at the motel. After the arrangements were made to make the purchase, Dial informed other officers of this fact. Dial arranged for these officers to go to the motel and keep Rooms 402, 338 and 228 under surveillance. Among the officers were William B. Inman and Tom Wilson, Narcotics Agents of the Mississippi Bureau of Narcotics. Some of the officers were in Room 406 where they could keep Room 402 under surveillance. Wilson and Inman were assigned to keep Room 338 under surveillance. They had in their possession at this time a search warrant for this room. It was arranged that when Dial came to the motel he would park his car in front of Room 406, before entering Room 402 where the narcotic deal was to be consummated. It was understood if he returned to his car and opened the trunk, the heroin was in Room 402 and he would be getting the money out of the trunk to pay for heroin.
At about 4:15 A.M. on December 13, Dial went to the motel, parked his car in front of Room 406 and entered Room 402 in accordance with the arrangements made over the telephone with Lay. After some delay, during which time Lay called Room 338 twice and told someone over the telephone to hurry up, Lay left the room and returned in a few minutes. He removed two packages from the waistband of his trousers. He handed the packages to Dial who examined them and satisfied himself that they contained heroin. Dial then went to his car, opened the trunk and removed $10,000 therefrom. He returned to the room, handed the money to Lay and told him to count it. Upon seeing Dial open the trunk of his car, Officers Boyles, Fairley and Fitzgerald went to Room 402, entered, arrested Lay and seized the heroin and the money.
For several hours prior to this time, Wilson and Inman were stationed in a room where they could keep Room 338 under surveillance. At about 3:30 A.M. Inman observed appellant and Roscoe Higgins enter Room 338. At about 4:30 A.M. Inman saw Lay enter Room 338 and stay about twenty minutes. When he came out he went in the direction of Room 402. About ten minutes later Wilson and Inman entered Room 338 and served the search warrant on appellant and Higgins who were in the room at that time. A search of the room revealed that several items were in the room including an ice bucket, a set of scales, mortar and pestle, colander, each of which had a small amount of a beige powder on them which turned out to be heroin. These items were seized and introduced in evidence along with the pound of heroin seized in Room 402.
*164 Roscoe Higgins, a co-indictee, testified for the state that he met Jimmy Lay and appellant in McAllen, Texas, about a week before December 13, 1972. By pre-arrangement they left McAllen and met at an apartment in New Orleans. They then left New Orleans on the night of December 11 and came to Jackson. Higgins and Randy Akers traveled in Higgins' car and appellant, Lay and Annie Mae Young came in appellant's Volkswagen van. They met at the Holiday Inn North where Higgins registered and appellant rented three rooms in the name of Andrew Meyer. On the next day, Lay requested Higgins to return to New Orleans and pick up his luggage at a girl called "Ray-Ray's" apartment. Higgins, Randy Akers and "Ray-Ray" then went to New Orleans and picked up the luggage. They left "Ray-Ray" in New Orleans and returned to Jackson with the luggage. Upon Akers' and Higgins' return to the motel, they went to Room 228 and found appellant. Appellant remarked to Higgins that it was about time he got back. Appellant and Higgins then went to Room 338 with the luggage. There they found Lay, who removed two packages from the luggage, weighed it and poured the substance in an ice bucket. Lay then weighed some milk sugar and poured it into the ice bucket and mixed it. Higgins and appellant assisted him in this task. During this time, Higgins heard Lay and appellant talking about their need to hurry and complete the deal. Lay then left and later called back twice telling them to hurry. Higgins said when Lay returned to the room he poured the mixture into bags. Higgins and appellant then started cleaning up the utensils used in the weighing and mixing. As they were scraping the residue of the heroin from the utensils, appellant told Higgins to put it in a little bag because he wanted to save it. While engaged in this task the officers came in, served the search warrant and arrested them.
Appellant testified in his own behalf and denied that he in any way aided, abetted or encouraged Lay in the sale of the heroin. He denied that he took part in the preparation of the heroin or that he knew anything about the deal. He also denied that he rented the three rooms at the motel. He contended that they were rented by one Palmore. He admitted, however, the rooms were in his name and that he paid a deposit on the rooms. He also admitted traveling from Texas to New Orleans and on to Jackson with Lay. He admitted he was in Room 338 when the officers came in and at that time he had one of the utensils in his hand. He said it was only after Lay left with the two bags that he discovered that Lay had mixed heroin in the bathroom and he was only trying to get rid of the residue of the heroin when the officers entered.
Appellant assigns several grounds for the reversal of this case. We will discuss those errors assigned which in our opinion merit discussion. The principal contention of appellant is that the trial court was in error in overruling his objection to the admission of the evidence seized as the result of the search of Room 338. It is his contention that the search warrant was invalid for several reasons. The principal one being that the underlying facts and circumstances set out in the affidavit for the search warrant were not sufficient to support the finding of the county judge that probable cause existed for the issuance of the search warrant. It is also contended that the affidavit for the search warrant was not properly dated and was not promptly returned. The statement of the underlying facts and circumstances is attached and made a part of the affidavit and it reads as follows:
On or about Tuesday, December 12, 1972, information was received from a reliable, confidential informer by the Jackson office of the Bureau of Narcotics and Dangerous Drugs and the State Bureau of Narcotics that James J. Lay, Jr., Room 402, Holiday Inn North, a known trafficker in controlled substances, and a fugitive from justice from the State of Louisiana; Jane Doe, AKA *165 Ray/Ray, Room 330, Holiday Inn North, also a known trafficker in controlled substances and one, Parker Meyer, registered as Andrew Meyer and AKA Andrew Meyer, Room 338, Holiday Inn North with a home address of 3308 Prytania Street, New Orleans, Louisiana, also a known trafficker in controlled substances with a reputation for dealing in same with the New Orleans Police did offer to the said confidential informer who has in the past furnished information leading to arrest and conviction of certain controlled substances offenders, for the sum of $10,000, one (1) pound of heroin, a Schedule I narcotic drug. Said informer has advised affiant that the trio has the pound of heroin in Jackson with them. Informer has talked with the trio simulating negotiations for the sale of the pound of heroin.
Andrew Meyer is driving a Volkswagen bearing Louisiana license tag 72/73 210B581.
We are of the opinion that the statements of the underlying facts and circumstances were sufficient for an impartial judicial officer to find probable cause for the issuance of a search warrant. The information was furnished by a reliable, confidential informer. Sufficient reasons are given why this information should be credible. It is of great importance that this informer had entered into negotiations with three people, one of whom was the appellant, to purchase a pound of heroin for $10,000. One of the parties who offered to sell the heroin, the appellant, was a New Orleans resident and his home address was given. He was a known dealer in controlled substances with a reputation for such by the New Orleans Police. One of the parties, James Lay, was a fugitive from justice in Louisiana. All three of the parties were registered at the Holiday Inn North and their room numbers were given. Under these circumstances a reasonable inference would be drawn that if they had the heroin as they say they had, it was probably in one of the rooms in which they were staying. The affiant was a special agent of the Federal Bureau of Narcotics and according to the warrant he was known to the county judge to be a credible person. The affiant had either received the report from the informer or received the information from an official law enforcement agency. Furthermore, the warrant recites that the judicial officer not only considered the facts and circumstances set out in the affidavit but also considered evidence in support thereof from the affiant. The presumption is that the judge satisfied himself that the information given by the affiant was credible and there was sufficient information for finding probable cause.
Appellant contends that the facts and circumstances set out in the statement amount to no more than mere suspicion that the heroin might be in one of the rooms. He cites and relies upon Barker v. State, 241 So.2d 355 (Miss. 1970). The underlying facts and circumstances set out in this case are readily distinguishable from Barker. The only information that the officers had that Barker might have marihuana in his home was that he previously had in his possession, some three weeks before, three cigarettes which he gave to the informer's wife. Of course, we held that even if the informer was reliable, the information amounted to mere suspicion that Barker might have marihuana in his home three weeks later. Here we have three transients, staying in a motel, offering to sell heroin to a reliable informer and it is probable that if they have the heroin, as they say they have, it is in one or more of their rooms.
We follow the rule that provisions for search and seizures are strictly construed against the state. However, when the circumstances are detailed, the reason for crediting the source of information is given, and the judicial officer has found probable cause, we will interpret the affidavit in a common sense manner. *166 Where the question is close as to probable cause, we will give preference to the warrant. Especially is this true when, as here, the affidavit is prepared by a non-lawyer in the midst and haste of a criminal investigation. To do otherwise would tend to discourage officers from submitting their evidence to a magistrate before acting.
We find no merit in appellant's contention that the search warrant is void because the date that appears upon the affidavit is incomplete. The date as it appears on the affidavit, is "12 December 197_". The cases cited by appellant in support of this argument deal with the date of the warrant and not with the date of the affidavit. Of course, it is important to know the date of the affidavit in order to judge whether probable cause existed at the time of the issuance of the warrant. It would be improper to issue a warrant based upon an affidavit which had been sworn to at some indefinite or remote time. However, here we have no such problem. The date of the warrant is 12 December 1972 and the warrant specifically refers to and incorporates by reference the affidavit, which includes by reference the statement of underlying facts and circumstances. The facts and circumstances sheet states the information was received on December 12, 1972. Consequently, it is clear that the affidavit was executed on 12 December 1972 immediately prior to the issuance of the warrant on the same date. Cf. Hendricks v. State, 144 Miss. 87, 109 So. 263 (1926).
Appellant also argues that the search was invalid because there was a breach of the statutory requirements that warrants should be "promptly" returned. The warrant was returnable instanter. It was served on December 13 and returned on December 15. Section 41-29-157(a)(3), Mississippi Code 1972 Annotated, requires that the warrant be executed and returned within ten days of its date. It also says that after a warrant is served it shall be returned promptly, accompanied by a written inventory of property taken. Interpreting that a warrant be returned "promptly" in the light of the ten-day requirement in the statute, we conclude that a return two days after the warrant was served was not a breach of the statutory requirements. It certainly was not an unreasonable delay and, in any event, appellant made no showing that he was in any way prejudiced by the delay in returning the warrant.
Appellant also assigns as error the refusal of the trial court to grant his request for a directed verdict at the close of the state's case. We find no merit in this assignment of error. It was clearly a jury issue as to whether appellant aided, abetted or encouraged Lay in the sale of the heroin. The jury found from the evidence beyond a reasonable doubt that appellant did aid, abet and encourage Lay in the sale of heroin. Its verdict is not against the overwhelming weight of the evidence.
Finally, appellant assigns as error the granting of three instructions at the request of the state. Appellant objected to two of these instructions, giving the reason for his objection, but upon appeal he argues that they are erroneous for reasons other than those assigned in the trial court. One of the purposes of Rule 42 of this Court, requiring specific objections to instructions, is to enable the trial court to decide whether the instruction is objectionable for the reason assigned. It is not permissible under this rule to object to an instruction on one ground and on appeal abandon that ground and argue that the instruction is erroneous for other reasons. Appellant made a proper objection to instruction No. 2, but when the instructions in this case for the state and for the defendant are read together, the jury was adequately instructed as to the law. Any error in the instructions complained of was harmless error beyond a reasonable doubt. Rush v. State, 278 So.2d 456 (Miss. 1973).
*167 After carefully considering and reviewing the record in this case, we find no reversible error and therefore the case must be and is affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, SMITH, ROBERTSON, SUGG and WALKER, JJ., concur.